UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

CASE NO. 24-14235-CIV-CANNON/McCabe

**EDDIE M. CANNON**,

    Plaintiff,

v.

**CITY OF PORT ST. LUCIE, et al.**,

    Defendants.
_____/

**ORDER ACCEPTING MAGISTRATE JUDGE'S
REPORTS AND RECOMMENDATIONS [ECF Nos. 61, 63]**

**THIS CAUSE** comes before the Court upon Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (the "Motion") [ECF No. 29], and Plaintiff's Motion for Default Judgment Against Defendant Dayana Cannon (the "Default Motion") [ECF No. 47]. Both motions were referred to Magistrate Judge Ryon M. McCabe for reports and recommendations [ECF No. 55]. On June 24, 2025, Magistrate Judge McCabe issued Reports on both motions recommending the following:

(1) Defendants' Motion be granted in part and denied in part, dismissing with prejudice Plaintiff's federal claims (Counts I and III) and remanding the remaining state claims (Counts II and IV through VI) [ECF No. 61]; and

(2) Plaintiff's Default Motion (alleging a state law malicious prosecution claim against Defendant Dayana Cannon, Count VI) be denied as moot without prejudice, to be renewed in state court in light of the recommendation that Plaintiff's state claims should be remanded to state court [ECF No. 63].

CASE NO. 24-14235-CIV-CANNON/McCabe

Plaintiff filed objections to the Report on Defendant's Motion [ECF No. 64] but did not file objections to the Report on his Default Motion and the time to do so has expired.[1]

The Court has reviewed both Reports [ECF Nos. 61, 63], Plaintiff's Objections [ECF No. 64], and the full record. Upon review, the Court finds both Reports to be sound and well-reasoned. Accordingly, for the reasons set forth below, both Reports [ECF Nos. 61, 63] are **ACCEPTED**. Defendants' Motion [ECF No. 29] is **GRANTED IN PART AND DENIED IN PART** in accordance with this Order. Counts I and III of Plaintiff's Second Amended Complaint [ECF No. 11] are **DISMISSED WITH PREJUDICE**. The Court declines to exercise supplemental jurisdiction over Counts II, IV, V, and VI, and this case is **REMANDED** to the Circuit Court of the Nineteenth Judicial Circuit in and for St. Lucie County, Florida. Plaintiff's Motion for Default Judgment Against Defendant Dayana Cannon [ECF No. 47] is **DENIED AS MOOT** without prejudice to renew in state court. The Clerk is directed to **CLOSE** the case.

### RELEVANT BACKGROUND[2]

In this civil rights action, Plaintiff sues his ex-wife, the City of Port St. Lucie, and a City police officer, alleging malicious prosecution for the theft of $158 worth of water [ECF No. 11]. Plaintiff is a Port St. Lucie resident who, at all relevant times, was embroiled in an acrimonious divorce from Defendant Dayana Cannon (the "Ex-Wife") [ECF No. 11 ¶¶ 10, 17]. Plaintiff alleges that, in an effort to gain an upper hand in the divorce, Ex-Wife filed a false police report against Plaintiff in March of 2022 [ECF No. 11 ¶ 10, 13–14, 17]. The report alleged that Plaintiff stole

---

[1] Defendants did not object to either Report or file a response to Plaintiff's objections, and the time to make either such filing has expired. *See* Fed. R. Civ. P. 72(b)(2).

[2] These facts are taken from Plaintiff's Second Amended Complaint [ECF No. 11] and are accepted as true for purposes of this Order. As discussed below, under the incorporation by reference doctrine, the Court also considers video footage filed by Defendants in connection with their Motion.

water from Ex-Wife by turning on the faucet at her business and allowing it to run freely for nearly 20 hours, resulting in a $158 water bill [ECF No. 11 ¶¶ 12, 18].

Defendant Officer Nichols took the report on behalf of the Port St. Lucie Police Department, relying upon the details relayed to him by Ex-Wife [ECF No. 11 ¶ 12].  In addition to the Ex-Wife's account, the police report referenced surveillance video footage of the incident and reported that both Ex-Wife and Officer Nichols recognized Plaintiff as the man in the video footage [ECF No. 11 ¶ 20–21].  The Court has reviewed the surveillance video footage, and it shows that a man drove to the business, double-parked his vehicle in front of an exterior water spigot, exited the vehicle, turned on the spigot, and then drove away, leaving the water to flow continuously into the parking lot.[3]

Based on Ex-Wife's statements and the video footage, Officer Nichols obtained an arrest warrant for Plaintiff on charges of first-degree petit theft [ECF No. 11 ¶¶ 29, 31].  On March 29, 2022, multiple police officers employed by the City arrested Plaintiff at his home pursuant to the outstanding arrest warrant [ECF No. 11 ¶¶ 29–31].  During the arrest, Plaintiff attempted to explain, to no avail, that he co-owned the subject property [ECF No. 11 ¶ 33].  The State Attorney's Office subsequently filed a "No Information," dropping the charges [ECF No. 11 ¶ 40].

Based on these events, Plaintiff sued his Ex-Wife, Officer Nichols, and the City in state court, alleging numerous claims, including violations of 42 U.S.C. § 1983 [ECF No. 1-1 p. 12–

---

[3] With leave of Court, Defendants filed the video footage as part of the pending Motion [ECF Nos. 31, 52].  Under the incorporation-by-reference doctrine, the Court "may properly consider a document [or item of evidence] not referred to or attached to a complaint" when resolving a motion to dismiss "if the document [or item] is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024) (permitting consideration of bodycam footage at the motion to dismiss stage). The Court agrees with the Report that both elements are satisfied here because (1) the video is referenced in the Second Amended Complaint and plainly depicts the alleged theft—the prosecution which forms the basis for Plaintiff's claims; and (2) Plaintiff has confirmed that he does not contest the authenticity of the video [*see* ECF No. 61 p. 2 n.1].

25]. Officer Nichols and the City thereafter removed the case to this Court based on federal question jurisdiction [ECF No. 1]. Plaintiff subsequently filed the operative Second Amended Complaint (the "Complaint"), alleging the following causes of action:

- Count I: Deprivation of rights under color of law in violation of 42 U.S.C. § 1983 against the City

- Count II: State law vicarious liability against the City

- Count III: Malicious prosecution in violation of 42 U.S.C. § 1983 against Officer Nichols

- Count IV: Florida state law malicious prosecution against Officer Nichols

- Count V: Florida state law false arrest against Officer Nichols

- Count VI: Florida state law malicious prosecution against Ex-Wife Dayana Cannon[4]

[ECF No. 11].

## LEGAL STANDARD

To challenge the findings and recommendations of a magistrate judge, a party must file specific written objections identifying the portions of the proposed findings and recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(3); *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989); *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). A district court reviews de novo those portions of the report to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1). To the extent a party fails to object to parts of the magistrate judge's report, the Court may accept the recommendation so long as there is no clear error on the face of the record. *Macort*, 208 F. App'x at 784.

---

[4] Defendant Dayana Cannon has failed to respond to the Complaint and remains in default [ECF No. 36].

CASE NO. 24-14235-CIV-CANNON/McCabe

## DISCUSSION

As previewed, the Report recommends that both of Plaintiff's federal claims (Counts I and III) be dismissed with prejudice and that the remaining state law claims be remanded to state court [ECF No. 61]. Plaintiff raises several objections to the Report's analysis of Counts I and III [ECF No. 64]. For the reasons below, the Court finds these objections to be without merit. Like the Report and Plaintiff's objections, the Court begins with Court III.

**I. Count III: Fourth Amendment § 1983 Claim for Malicious Prosecution against Officer Nichols**

The Report on Defendants' Motion to Dismiss begins with Count III: the Fourth Amendment claim filed pursuant to § 1983 for malicious prosecution against Officer Nichols [ECF No. 61 pp. 4–9]. On that Count, the Report concludes that Officer Nichols is entitled to qualified immunity because, based on the Ex-Wife's allegations and the video footage, Officer Nichols had arguable probable cause to arrest Plaintiff under the Florida Theft Statute Fla. Stat. § 812.014 [ECF No. 61 pp. 7–9]. Accordingly, the Report recommends that Count III be dismissed with prejudice [ECF No. 61 p. 14]. Plaintiff raises several objections to the Report's analysis of Court III. But ultimately, the Court agrees with the Report's assessment.

A. <u>Qualified Immunity</u>[5]

First, Plaintiff incorrectly argues that the Complaint contains sufficient allegations to conclude that Officer Nichols arrested Plaintiff "without probable cause," and therefore the Report erred in recommending dismissal of the malicious prosecution claim in Count III [ECF No. 64 pp. 2–3]. In support of his belief that Officer Nichols lacked probable cause to arrest, Plaintiff

---

[5] Plaintiff objects that a defense of "qualified immunity is inappropriate at the motion to dismiss stage" [ECF No. 64 p. 6]. But the Eleventh Circuit has "repeatedly" held just the opposite, explaining that "[a] district court must adjudicate a defense of qualified immunity at whatever stage it is raised." *Miller v. Palm Beach Cnty. Sheriff's Off.*, 129 F.4th 1329, 1333 (11th Cir. 2025) (holding that district court derred by reserving ruling on qualified immunity until summary judgment).

5

points to the allegations that he had a shared interest in the subject property; he accessed the property in a non-criminal manner; the water bill was "incidental"; and "no intent to steal or deprive another of a benefit was established" [ECF No. 64 pp. 2–3].  This objection fails.  As a preliminary point, the Report does not address whether Officer Nichols's arrest of Plaintiff was supported by *actual probable cause* because, as the Report correctly observes, an officer need only have "arguable" probable cause to receive qualified immunity in the context of a § 1983 malicious prosecution claim.  *See Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1257 (11th Cir. 2010).  Judged against that standard, and based on a review of the allegations in the Complaint and the incorporated video footage, the Court agrees with the Report that Officer Nichols had at least arguable probable cause to arrest Plaintiff for knowingly depriving his Ex-Wife of a right to property (the water), in violation of Fla. Stat. § 812.014.  As the Report observes, the video shows that Plaintiff drove to the business, double-parked his vehicle in front of the building's exterior water spigot, exited his vehicle, turned on the water spigot, and then drove away, leaving the water to flow continuously into the parking lot.  The Complaint further alleges that Ex-Wife showed the footage to Officer Nichols, claimed that she owned the business, and that Plaintiff's actions resulted in a $158 water bill the following month [ECF No. 11 ¶¶ 18–20].  Based on those facts, Officer Nichols had at least arguable probable cause to arrest Plaintiff for a violation of Florida's theft statute.

Second, Plaintiff contends that Officer Nichols unreasonably failed to verify the owner of business and relied on the Ex-Wife's account [ECF No. 64 pp. 1–6], making the Report's application of qualified immunity erroneous.[6]  Like the Report, the Court is not persuaded by Plaintiff's insistence that Officer Nichols needed to do more work before making his probable

---

[6] Though packaged under four separate objection headings, substantively, these objections are really one and the same [ECF No. 64 pp. 1–6 (objection headings A, D, F, and G)].

cause determination. An officer need not "explore or eliminate every theoretically plausible claim of innocence" to have probable cause. *Washington v. Rivera*, 939 F.3d 1239, 1246 (11th Cir. 2019) (quotation and internal citation omitted). "Nor does an officer's failure to interview a suspect, without more, undermine probable cause." *Hernandez v. Sheriff of Manatee Cnty., Fla.*, No. 24-10011, 2025 WL 1927522, at *3 (11th Cir. July 14, 2025); *see District of Columbia v. Wesby*, 583 U.S. 48, 61 (2018) ("[P]robable cause does not require officers to rule out a suspect's innocent explanation[.]"). This is why, for example, the Eleventh Circuit determined in *Kingsland v. City of Miami*, 382 F.3d 1220, 1224 (11th Cir. 2004), that factual issues prevented the grant of qualified immunity on summary judgment—where officers "didn't just fail to follow-up or even turn a blind eye, *they affirmatively misrepresented their intentions and came dangerously close—if they didn't go all the way—to manufacturing evidence*." *Huebner v. Bradshaw*, 935 F.3d 1183, 1190 (11th Cir. 2019) (emphasis added) (distinguishing *Kingsland*); *Hernandez*, 2025 WL 1927522, at *3 (noting that "only an investigative defect—like when an officer 'consciously and deliberately d[oes] not make an effort to uncover reasonably discoverable, material information'—undermines probable cause") (quoting *Kingsland*, 382 F.3d at 1230). Compare that to the facts here, where Plaintiff makes no allegation that Officer Nichols made affirmative misrepresentations or consciously and deliberately ignored material facts. Nor has Plaintiff identified any caselaw suggesting that Officer Nichols had an obligation under like circumstances to conduct further investigation before making his probable cause determination. The arrest was supported by at least arguable probable cause. Plaintiff's objections on this point fail.

B. The Surveillance Video Footage

Plaintiff next says that the Report improperly weighed the evidence by relying on the video footage, and that the Report further misstated the legal effect of the video [ECF No. 64 pp. 3–4]. Not so. First, Plaintiff is mistaken that "[c]ourts may consider video at the motion to dismiss stage

only where it 'blatantly contradicts' the plaintiff's allegations" [ECF No. 64 p. 3]. There is no such precondition to a court's *consideration* of the information under the incorporation by reference doctrine, although it is true that courts construe all ambiguities in video footage in favor of a plaintiff's account at the pleading stage. *Baker v. City of Madison, Alabama*, 67 F.4th 1268, 1277–1278 & n.3 (11th Cir. 2023). The Court is thus not prohibited from considering the video at all under the incorporation by reference doctrine. *Id.* at 1277 n.3 (specifically rejecting argument that ambiguities in video evidence and disagreements over a video's content preclude consideration of video by the court). Second, Plaintiff argues that the video does not fully establish the necessary elements of Florida's theft statute, Fla. Stat. § 812.014 [ECF No. 64 p. 4], but this argument ignores the settled understanding that arguable probable cause does not require an officer to definitively determine that all of the elements of a crime have been satisfied. *See Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 735 (11th Cir. 2010) ("Showing arguable probable cause does not, however, require proving every element of a crime."); *see also Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990). Moreover, the Report did not rely on the video footage to definitively resolve the issues of Plaintiff's intent or the property rights in the water. Rather, the Report relied on the video—in conjunction with the Ex-Wife's account as set forth in the Complaint—to conclude that, even construing the facts in the light most favorable to Plaintiff, Officer Nichols had arguable probable cause to believe Plaintiff committed theft of the water, [ECF No. 61 pp. 3, 7–9]. That decision was and remains correct, for the reasons already discussed.[7]

The federal malicious prosecution claim in Count III is due to be dismissed.

---

[7] In a final, passing attempt to avoid any consideration of the video, Plaintiff says that "reliance on video footage without context or authentication (e.g., timestamps, angles, who operated the camera) is improper without discovery" [ECF No. 64 p. 4]. But as already noted, Plaintiff admits the video is authentic. *See supra* p. 3 n.3.

## II. Count I: Deprivation of Fourth Amendment rights in violation of 42 U.S.C. § 1983 against the City

The Report then turns to Count I, as does this Court: the *Monell* claim against the City [ECF No. 61 pp. 9–13]. The Report concludes that Count I fails for two reasons. First, since Officer Nichols is entitled to qualified immunity on Count III, Plaintiff has no plausible claim against Officer Nichols for an underlying constitutional violation, and therefore Plaintiff has no plausible *Monell* claim against the City stemming from that purported violation [ECF No. 61 p. 10]. Second, the Report concludes that, even without the qualified immunity defense as to Nichols, the Complaint fails to allege sufficient facts to support a *Monell* claim [ECF No. 61 pp. 10–13]. Plaintiff takes issue with both of those determinations, claiming that (1) municipal liability can still persist despite the application of qualified immunity as to Officer Nichols and (2) the Complaint nonetheless sufficiently alleges *Monell* liability against the City, even setting aside qualified immunity for Officer Nichols [ECF No. 64 pp. 6–7]. The Court agrees with the Report.

First, contrary to Plaintiff's arguments, the Report correctly dismissed Plaintiff's *Monell* claim against the City upon concluding that Officer Nichols is entitled to qualified immunity. Plaintiff claims error in that decision, citing *Anderson v. City of Atlanta*, 778 F.2d 678 (11th Cir. 1985), but *Anderson* does not help Plaintiff here. In *Anderson*, the plaintiff brought § 1983 claims alleging that individual officers and the City of Atlanta deprived him of his right to life through deliberate indifference to his serious medical needs, ultimately resulting in his death at the jail. *Id.* at 686. After the jury found no liability on the claims as to the individual officers, the Eleventh Circuit reasoned that the city still faced potential liability, because (1) the plaintiff traveled under a theory that the deprivation of his constitutional rights was a result of jail understaffing and (2) the trial record contained evidence of such understaffing. *Id.* at 686. In that specific context, the Eleventh Circuit explained that it was consistent to impose liability on the city despite the absence

9

of individual liability as to the officers. *Id.* That unique situation does not map on to this case. Indeed, Plaintiff's Complaint rests on the alleged conduct of an individual officer allegedly reaching an erroneous probable cause determination, without any City-specific allegations independent of Officer Nichols's conduct [ECF No. 11]. So Plaintiff's reliance on *Anderson* is misplaced. Moreover, nothing in *Anderson* detracts from the general rule—as correctly recognized in the Report—that a city cannot be liable for the purported constitutional violation of its officers when no such violation occurred. *See Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 821 (11th Cir. 2017) ("There can be no policy-based liability or supervisory liability when there is no underlying constitutional violation"); *Andrews v. Marshall*, 845 F. App'x 849, 855 (11th Cir. 2021) (finding *Monell* claim failed where claim was based on an alleged false arrest that was supported by arguable probable cause). That is the case here; the Complaint targets the actions of Officer Nichols alone, and in the absence of a Fourth Amendment constitutional violation by Officer Nichols, "Plaintiff likewise has no plausible *Monell* claim against the City *stemming from that* [alleged] *violation*" [ECF No. 61 p. 10 (emphasis added)]. The Court finds no basis to disturb that conclusion.

Lastly, to the extent Plaintiff faults the Report for generally concluding that the Complaint lacks sufficient allegations to support *Monell* liability [ECF No. 64 pp. 6–7], the Court concurs with the Report's analysis [ECF No. 61 pp. 10–14]. As the Report recognizes, "without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise." *Gold v. City of Miami*, 151 F.3d 1346, 1351 (11th Cir. 1998); *see* ECF No. 61 pp. 12–13 (citing *Gold* and *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). There are simply no facts in the Complaint suggesting such notice here. The best Plaintiff can muster is a request to proceed to discovery so he can "determine whether other instances of misconduct exist" [ECF No. 64 p. 7]. But adopting Plaintiff's "less stringent standard of fault for a failure-to-

train [or supervise] claim would result in *de facto respondeat superior liability* on municipalities . . . ." *Connick*, 563 U.S. at 62. The Court agrees with the Report that Count I is due to be dismissed.

\*\*\*

Finally, based on the Report's conclusion that Plaintiff's federal claims fail, the Report recommends that the state law claims in Counts II, IV, V, and VI be remanded to state court [ECF No. 61 pp. 13–14]. No party objects to that analysis. And upon review, the Court agrees that remand is warranted.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Reports and Recommendations [ECF Nos. 61, 63] are **ACCEPTED**.

2. Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [ECF No. 29] is **GRANTED IN PART AND DENIED IN PART** in accordance with this Order.

    a. Counts I and III of Plaintiff's Second Amended Complaint [ECF No. 11 ¶¶ 43–49, 61–66] are **DISMISSED WITH PREJUDICE**.[8]

    b. The Motion is otherwise **DENIED** based on the Court's remand. The Court expresses no opinion about the merits of those claims.

3. This case is **REMANDED** to the Circuit Court of the Nineteenth Judicial Circuit in and for St. Lucie County, Florida.

---

[8] Plaintiff has not requested leave to amend or identified any specific, non-speculative allegations he would add if granted further leave to amend. In any event, the Court agrees with the Report that any further amendment would be futile given Plaintiff's three opportunities to plead his claims [ECF No. 1-1 p. 2 (noting initial amendment); ECF No. 1-1 p. 12 (Amended Complaint); ECF No. 11 (Second Amended Complaint)].

4. Plaintiff's Motion for Default Judgment Against Defendant Dayana Cannon [ECF No. 47] is **DENIED AS MOOT** without prejudice to renew in state court.

5. The Clerk shall **CLOSE** this case.

**ORDERED** in Chambers at Fort Pierce, Florida, this 31st day of July 2025.

_____
**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record